**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

CA 06 86S

| | | |
|---|---|---|
| **PATRIOT FUNDING, LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. ___________** |
| **v.** | ) | |
| | ) | |
| **HEATH LEFORT, FAIRWAY INDEPENDENT MORTGAGE CORP. d/b/a FAIRWAY NEW ENGLAND MORTGAGE,** | ) | |
| **Defendants.** | | |

# VERIFIED COMPLAINT

Plaintiff Patriot Funding, LLC, ("Patriot") by and through counsel for its complaint against Defendants Heath Lefort ("Lefort") and Fairway Independent Mortgage Corporation d/b/a Fairway New England Mortgage ("Fairway") states as follows:

## Introduction

1. Patriot brings this action to enforce the terms of the Non-disclosure and Non-competition Agreement, dated September 10, 2002, with Lefort, its former Director of Specialized Lending. A true and correct copy of the Patriot Agreement dated September 10, 2002 ("Agreement") is attached hereto as Exhibit A. Lefort has breached the non-compete covenant of the Agreement by going to work for a direct competitor of Patriot's, Fairway Independent Mortgage Corporation d/b/a Fairway New England Mortgage ("Fairway"). It appears that he went to work for Fairway even before he resigned from Patriot on January 10, 2006. He then became Fairway's Vice President in charge of alternative lending after he

resigned from Patriot. In addition, Lefort breached the non-solicit covenant of the Agreement by soliciting Patriot customers and employees. The enforcement of the Agreement will not prevent defendant Lefort from earning a living in mortgage lending, which is his area of expertise. Patriot also brings this action to seek injunctive relief and damages from Lefort based on his threatened disclosure and use of Patriot's trade secrets and confidential information. The Agreement prohibits Lefort from divulging Patriot's trade secrets or confidential information to third parties or using those trade secrets and information after he leaves his employment with Patriot.

2. Patriot also brings this action for tortious interference with contractual relations and for misappropriation of trade secrets against its direct competitor Fairway. First, Fairway, without legal justification, recruited and employed Lefort in the position of Vice President of alternative lending. Upon information and belief, Fairway did so with full knowledge of 1) the provisions of Lefort's Agreement with Patriot, including the non-compete and non-solicit provisions, 2) the provision regarding protection of Patriot confidential information and trade secrets, and 3) with the intent to benefit from Lefort's knowledge of Patriot's confidential information and trade secrets. Patriot brings this action, therefore, to obtain relief for Fairway's intentional interference in the Patriot-Lefort contractual relationship. Second, Patriot brings this action to seek injunctive relief and damages from Fairway based on its acquisition through improper means and use of Patriot's trade secrets and confidential information.

Parties

3. Plaintiff Patriot is a Massachusetts limited liability company with its principal place of business at 495 Old Connecticut Path, Framingham, MA. Patriot is in the residential home mortgage business. It is licensed to do business in Rhode Island, Massachusetts, Connecticut, New Hampshire, Maine and Florida.

4. Defendant Lefort is an individual who resides at 28 Branch Avenue, Cranston, RI. Lefort worked as the Director of Specialized Lending for Patriot for the period from September 10, 2002 through January 10, 2006 in Cranston, RI. Lefort is presently employed by Patriot's competitor, Fairway, in the position of Vice President of alternative lending.

5. Defendant Fairway is a Texas corporation with its principal place of business at 771 Lois Drive, Sun Prairie, Wisconsin. Fairway is in the residential home mortgage business. Fairway engages in the same business as Patriot, and thus is a direct competitor of Patriot. It received a license to do business in Rhode Island in November 2005.

Jurisdiction and Venue

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy is between citizens of different states and exceeds the sum or value of Seventy-Five Thousand ($75,000.00) Dollars exclusive interest and costs.

7. Venue over this action is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because the defendant resides in this judicial district and a substantial part of the events or relations given rise to the claims occurred in this judicial district.

Statement of Facts

Patriot's Business

8. Patriot provides a full range of residential mortgage lending programs, including specialized lending. Patriot's Specialized Lending division has developed an expertise with respect to high risk, non-traditional loans. As Director of Specialized Lending, Lefort had the responsibility to oversee the daily functions of the division, including, among other things, recruiting loan officers for the division, managing the loan process, ensuring that Patriot was in compliance with both governmental regulations and industry guidelines, and interacting with

Patriot loan officers who handled traditional loans to ensure they understood the role of Specialized Lending and would act as a referral source for Specialized Lending.

9. Patriot has attained and can only maintain its present market share and competitive advantage by preserving the confidentiality of its pricing information, including pricing margins and the sale of loans in secondary markets, customer information, and other proprietary information. Such information constitutes valuable confidential and trade secret information of Patriot. Patriot divulged that information to Lefort in the course of his employment.

10. Patriot takes care to maintain the confidential nature of such information. Among other things, access to Patriot's entire loan database is restricted to essential managers, including Lefort. Access to Patriot's customer information is password protected. If that information became available to a competitor or publicly known, Patriot's competitive advantage would be seriously compromised. Moreover, the substantial monetary and other investments Patriot has made in attaining its position in the industry, as well as its goodwill, relationships, and reputation, would be substantially and irreparably harmed and damaged.

11. Patriot also requires certain key personnel, including Lefort, to execute Agreements that contain non-competition and non-solicit provisions, as well as provisions pursuant to which the employee agreed to maintain the confidentiality of Patriot trade secrets and confidential information.

Lefort's Employment Agreement with Patriot

12. Lefort executed an Nondisclosure and Noncompetition Agreement ("Agreement") with Patriot effective September 10, 2002. His first day of work was October 1, 2002. The

Agreement was a condition of his employment. See Offer of Employment letter dated August 28, 2002, attached hereto as Exhibit A, and Agreement, attached hereto as Exhibit B.

13. Section 1(a) of the Agreement prohibits Lefort, both during and after his employment, from using for his own benefit or disclosing to third parties confidential and trade secret information including, but not limited to,

> trade secrets, customer or client lists, financial matters, company records of accounts, business projection, company contracts, marketing plans, pricing information and formulas, matters contained in unpublished records and correspondence, planned expansion programs including areas of expansion, equipment requirements, potential customer lists, licensing and franchising activities, products in development or contemplated, and any and all information concerning the business or affairs of the Company or an Affiliated Company which is not known by or generally available to the public.

14. Lefort also signed a separate Confidentiality Agreement with the same terms on September 26, 2002. A copy is attached as Exhibit C.

15. Section 2(a) of the Nondisclosure and Noncompetition Agreement requires that Lefort not compete with Patriot during the course of his employment. It specifically provides, in part, as follows:

> The Employee agrees that during his employment by the Company he will devote his entire services, skills, abilities and working time to his employment by the Company...

16. In addition, Section 2(c) of the Agreement provides, in part, as follows:

> Employee further agrees that for a period of thirty-six (36) months from the date of such termination [of employment], ... he will not, on behalf of himself or any competitor of the Company or any Affiliated Company or as part of any business entity, (i) compete for, or engage in the solicitation of, any person or entity that the Company or an Affiliated Company has, during the three (3) years immediately preceding such termination, solicited or serviced; or (ii) hire or engage, or attempt to hire or engage,

> any individual who was an employee of the Company at any time during the three (3) year period immediately prior to such termination or during the thirty six (36) month non-solicitation period; ...

17. Section 2(d) of the Agreement provides, in part, as follows:

> Employee further agrees that for a period of thirty-six (36) months from the date of such termination [of employment], ... he will not accept employment with, or render services to, any person or entity that the Company or Affiliated Company has solicited, serviced or received services from (a "Customer") during the three (3) years immediately preceding such termination, where either (i) Employee's duties in the course of such activities would be similar to those he has performed for the Company hereunder and such Customer offers products or services similar to those offered by the Company, (ii) Employee's duties in the course of such activities would involve disclosure or use of the Proprietary Information described in Section 1 herein [which includes customer or client lists], or (iii) the duties and services performed and provided by the Employee for such customer are duties and services for which such Customer would customarily engage the Company to perform and provide.

18. Specifically, during the course of his employment defendant received confidential information regarding Patriot's business and financial methods and practices, pricing, operating margins, selling techniques and information, customer lists, and details of customer agreements.

19. Pursuant to Section 2(f) of the Agreement, Lefort specifically represented and warranted that "the knowledge, skill and abilities he possesses are sufficient to permit him, ..., to earn, for a period of thirty six (36) months from such termination, a livelihood satisfactory to himself without violating any provisions of Section 2 hereof, for example, by using such knowledge, skills and abilities, or some of them, in the service of a non-competitor of the Company."

20. The Agreement specifies that it is governed by the laws of Massachusetts.

<u>Lefort Breaches His Agreement While Working for Patriot</u>

21. More than eight months before he resigned from Patriot, on April 26, 2005, Lefort sent an email to an email group from his personal email account, <u>hlefort28@cox.net</u>. The

subject line of the email was "Your Weekly Market Update from Heath Lefort." Therefore, it is clear from the email that Lefort sent such messages on a weekly basis, while he was employed by Patriot. The email identified Lefort as being affiliated with Fairway New England Mortgage, and made no mention of Patriot Funding.

22. Prior to his resignation from Patriot, Lefort established the website www.alternativelendinggroup.com, in which he is identified as the only staff member. The address given for Alternative Lending Group is 28 Branch Avenue, Cranston, RI, which is Lefort's home address. Alternative Lending Group is not listed as a mortgage licensee by the Rhode Island Department of Business Regulation. The telephone numbers provided are not Patriot telephone numbers. In that website, Alternative Lending Group held itself out as lending in Massachusetts, Rhode Island, Connecticut, New Hampshire, Maine and Florida. The website added a reference to Fairway New England Mortgage after Lefort resigned from Patriot.

23. On December 2, 2005, Lefort forwarded to his private email address forms used by Patriot in the course of its business. There was no legitimate reason for Lefort to forward those documents.

24. During at least the month prior to his resignation from Patriot, Lefort forwarded numerous Patriot documents to his private email address. Among the documents he forwarded were the Closed End Reports for November 2005 and December 2005.

25. Those reports list the loans that were closed in the previous month, and contain confidentiality and proprietary information regarding Patriot clients. That list is circulated on a limited basis within Patriot due to the sensitive nature of the information. Indeed, Lefort had access to the entire loan database at Patriot due to his position as Director of Specialized Lending. The only other individuals with similar access were the other members of the

management team, as well as Teresa Roy, the loan analyst assigned to Lefort. There was no legitimate reason for Lefort to forward those documents.

26. On December 8, 2005, Lefort forwarded to his private email address a pdf of a loan application and approval for Timothy and Susan Lang. The document does not indicate that the Langs were clients of Patriot. Nor do the Langs appear anywhere in Patriot's database. Therefore, upon information and belief, Lefort was assisting the Langs during the period that he was employed by Patriot, in violation of his Agreement.

27. Also on December 8, 2005, Lefort forwarded to his private email address confidential income and tax documents of a Patriot client, Sarah Kabugo. There was no legitimate reason for Lefort to forward those documents.

28. On December 19, 2005, Lefort also forwarded to his private email address a broker agreement, resumes of Patriot managers, and copies of Massachusetts and Rhode Island licenses. There was no legitimate reason for Lefort to forward those documents.

29. On December 22, 2005, Lefort sent an email to a real estate attorney referencing his "personal website, www.alternativelendinggroup.com."

30. On December 30, 2005, Lefort emailed Michael Ercoli at Mortgage Coach to tell him to stop using his Patriot email address and to use his private email address.

31. Also during the month before he resigned, Lefort forwarded to his private email address "Reports of Mailing/Customer of Interest Reports."

32. Those reports are generated and sent to Patriot by Continuity Programs, Inc. ("Continuity") pursuant to a contract between Patriot and Continuity dated November 11, 1999. Pursuant to that contract, Continuity provides a database customer communication program. Continuity's reports of its activities belong to Patriot. Patriot pays sixty-five percent (65%) of

the cost of the program. Patriot employees who wish to participate pay the remainder of the cost. Participation is completely voluntary, on an "opt-in" "opt-out" basis.

33. Each report from Continuity identifies customers to whom Continuity has sent a communication on behalf of Patriot in the previous month. The identifying information includes contact information for the customers, as well as information regarding the amount and terms of the customer's loan. There was no legitimate reason for Lefort to forward those documents.

Lefort Resigns, and Continues to Breach His Agreement

34. On or about January 10, 2006, Lefort resigned from Patriot. He gave two weeks' notice. However, Patriot informed him that it would treat his resignation as being effective immediately.

35. Lefort, in violation of his Agreement with Patriot, solicited his loan assistant Teresa Roy to come work for him after he left Patriot.

36. Immediately after he resigned from Patriot, Lefort sent emails to Patriot customers promoting himself and Alternative Lending Group, in violation of his Agreement with Patriot. Upon information and belief, Lefort is continuing to solicit the business of Patriot customers on behalf of Fairway and Alternative Lending Group, in violation of his Agreement with Patriot.

37. By accepting the Vice President of alternative lending position with Fairway, a known competitor of Patriot, Lefort has violated and continues to violate Section 2 of his Agreement with Patriot.

38. Upon information and belief, as Fairway's Vice President of alternative lending, Lefort is regularly involved in establishment of pricing models and margins, just as he was with Patriot. As such, the position allows Lefort to use Patriot's trade secrets and confidential

information that he acquired during the course of his employment. Indeed, it is inevitable that he will use Patriot's trade secrets and confidential information in his position at Fairway. Furthermore, it is believed that Lefort has violated and will continue to violate his non-disclosure obligations under the Agreement.

Patriot Sends Lefort a Cease and Desist Letter

39. By letter dated January 24, 2006, undersigned counsel for Patriot advised Lefort to cease and desist all activities that violate his Agreement with Patriot. A true and correct copy of Mr. McNamara's letter is attached hereto and incorporated herein by reference as Exhibit B. Mr. McNamara sent a copy of this letter to Lefort's new employer, Fairway.

40. On February 1, 2006, after receipt of Mr. McNamara's letter, Fairway issued press release announcing that it was creating an alternative lending division, headed by Lefort. Upopn information and belief, Fairway's alternative lending division engages in substantially the same business as Patriot's Specialized Lending division, and Lefort's position with Fairway is substantially similar if not identical to his position at Patriot.

**Count I**

**Rhode Island Uniform Trade Secrets Act**

**(against Lefort)**

41. Patriot realleges and incorporates by reference its allegations in Paragraphs 1-40 above.

42. Patriot and Lefort are both "persons" pursuant to Rhode Island General Laws Section 6-41-1(c).

43. During his employment with Patriot, Lefort acquired knowledge of Patriot's trade secrets concerning clients and lending practices.

44. During his employment with Patriot, Lefort improperly used Patriot's confidential information and trade secrets for his own benefit, to the detriment of Patriot.

45. In January 2006, Lefort abruptly resigned his position with Patriot, and began working for Fairway.

46. Patriot subsequently learned that Lefort was working for Fairway as Vice President of alternative lending.

47. Lefort has, upon information and belief, misappropriated or threatened to misappropriate Patriot's trade secrets. It is inevitable that, through his work for Fairway, Lefort will disclose Patriot's trade secrets and confidential business information.

48. Patriot will suffer substantial, immediate and irreparable harm and damages unless Lefort is enjoined from disclosing and using such trade secrets and confidential business information. In addition, Lefort has caused or will cause Patriot damages in an amount to be determined at trial.

49. Pursuant to Rhode Island General Laws Sections 6-41-2, 6-41-3 and 6-41-4, Patriot is entitled to injunctive relief, damages, and other affirmative relief to ensure the protection of its trade secrets, reasonable attorney's fees, exemplary damages, and/or other appropriate relief.

**Count II**

**Breach of Contract**

**(against Lefort)**

50 Patriot realleges and incorporates by reference its allegations in Paragraphs 1-40 above.

51. Patriot has fully performed any obligations to Lefort under the parties' Agreement.

52. Lefort has breached and continues to breach his obligations to Patriot under Section 2 of the Agreement by 1) working for his own benefit, to the detriment of Patriot, during his employment by Patriot, and 2) working for Patriot's direct competitor, as Vice President of alternative lending.

53. Lefort has also breached and continues to breach his obligations under Section 2 of the Agreement by soliciting a Patriot employee to leave her employment, and by soliciting Patriot clients.

54. By engaging in the conduct described above, Lefort has also breached and continues to breach his obligations under Section 2 of the Agreement by, among other things, using and disclosing Patriot's proprietary and confidential information and trade secrets, including but not limited to Patriot's business and financial methods and practices, pricing, operating margins, selling techniques and information, customer lists, and details of customer agreements.

55. Lefort's breach of the Agreement presents an immediate threat of irreparable harm to Patriot. In addition, Lefort has caused or will cause Patriot damages in an amount to be determined at trial.

## Count III

## Misappropriation Under the Uniform Trade Secrets Act

## (against Fairway)

56. Patriot realleges and incorporates by reference its allegations in Paragraphs 1-63 above.

57. Patriot and Fairway are both "persons" pursuant to R.I.G.L. §6-41-1(3).

58. During his employment with Patriot, Lefort acquired knowledge of Patriot's trade secrets, as defined by R.I.G.L. §6-41-4, sales and clients.

59. In January 2006, Lefort abruptly resigned from his position with Patriot, and began working for Fairway as Vice President of alternative lending.

60. Fairway misappropriated Patriot's trade secrets through improper means.

61. Fairway's misappropriation of Patriot's trade secrets was willful and malicious.

62. Fairway has caused or will cause Patriot damages in an amount to be determined at trial.

63. Pursuant to R.I.G.L. §§6-41-2, 6-41-3 and 6-41-4, Patriot is entitled to injunctive relief, damages, and other affirmative relief to ensure the protection of its trade secrets, reasonable attorney's fees, exemplary damages, and/or other appropriate relief.

**Count IV**

**Tortious Interference with Contractual Relations**

**(against Fairway)**

64. Patriot realleges and incorporates by reference its allegations in Paragraphs 1-63 above.

65. Patriot and Lefort entered into an Agreement wherein Lefort agreed to maintain the confidentiality of Patriot confidential information, not to solicit Patriot clients, and not to compete with Patriot for a thirty-six month period after leaving Patriot's employment.

66. Fairway was aware of that Agreement prior to hiring Lefort.

67. Despite Fairway's knowledge of the existence of that Agreement, it intentionally interfered with the contract, and recruited Lefort to work for it in a role identical to the one that he performed for Patriot.

68. Fairway tortiously interfered with the Agreement between Patriot and Lefort without justification and with the intent to benefit from Lefort's knowledge of Patriot's trade secrets and confidential information.

69. Patriot has suffered damages as a result in an amount to be determined at trial.

Relief

WHEREFORE, plaintiff Patriot Funding, LLC, prays that:

1. A preliminary injunction be issued enjoining Defendant Lefort, and all persons acting in concert with him or on his behalf, during the pendency of this litigation, as follows:

a. being employed by or rendering services in any way to Fairway or any other direct competitor of Patriot;

b. from using or disclosing, in whole or in part, any of Patriot's trade secrets or confidential information, such as its business and financial methods and practices, pricing practices and strategies, operating margins, selling techniques and information, customer lists, and details of customer agreements; and

c. from soliciting or attempting to solicit Patriot customers, potential customers that Patriot has solicited, or any current or former Patriot employee;

2. A permanent injunction be issued enjoining Defendant Lefort, and all persons acting in concert with him or on his behalf, as follows:

a. until January 10, 2009, from being employed by or rendering services in any way to Fairway, or any other direct competitor of Patriot; and

b. from using or disclosing, in whole or in part, any of Patriot's trade secrets or confidential information, such as its business and financial methods and practices, pricing

practices and strategies, operating margins, selling techniques and information, customer lists, and details of customer agreements;

c. until January 10, 2009, from soliciting or attempting to solicit Patriot customers, potential customers that Patriot has solicited, or any current or former Patriot employee.

3. An Order of Court be issued directing Defendant Lefort to return to Patriot any and all documents, software and things obtained during his employment with Patriot (and all copies thereof), including without limitation, any and all customer files or compilations of customer-related information.

4. An award to Patriot of its damages, attorneys' fees, costs and interest. Patriot requests that damages be doubled pursuant to Rhode Island General Laws section 6-41-3; and

5. Such other relief as may be just or appropriate.

PATRIOT FUNDING, LLC,

By its attorneys,

HOLLAND & KNIGHT LLP

Neal J. McNamara, Esq. (4249)
One Financial Plaza, Suite 1800
Providence, Rhode Island 02903
Telephone: (401) 751-8500
Facsimile: (401) 553-6850

VERIFICATION

I, James Picciotto, President of Patriot Funding LLC, on behalf of Patriot Funding, LLC, verify that I have read the allegations contained in the Verified Complaint, that I have personal knowledge of certain facts, and that the facts stated in the Verified Complaint are true, that all of the matters stated therein are not within my personal knowledge and that those matters that are not within my personal knowledge have been assembled by authorized employees, agents, and

representatives of Patriot, and I am informed that those facts are true. With respect to those facts alleged upon information and belief, as to those facts, I believe they are true. I verify under penalty of perjury that the foregoing is true and correct. Executed on 21 day of February, 2006. ____________, Rhode Island.

______________________________

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

The foregoing instrument was acknowledged before me this 21 day of February, 2006, by James Picciotto, personally known to me and acknowledged the same to be his free act and deed.

______________________________
Notary Public
My Commission Expires: 8/9/07

# 3572619_v1