PATRIOT FUNDING®

New England's Home Financing Team

## NONDISCLOSURE AND NONCOMPETITION AGREEMENT

AGREEMENT made as of the __10__ day of September, 2002 by and between PATRIOT FUNDING L.P., a Massachusetts limited partnership doing business as Patriot Funding (the "Company") and ____________________ of Heath B. Lefort __________ (the "Employee").

RECITALS

1. Employee acknowledges that he knew that he would be required to enter into this Agreement in exchange for the Company's employment of employee, and Employee accepted employment with such knowledge.

2. Employee acknowledges that in the course of rendering services to the Company, he may have and will become acquainted with information about the business and financial affairs of the Company, and may have contributed or may in the future contribute to such information.

3. Employee recognizes that in order to protect the legitimate interests of the Company it is necessary for the Company to protect all such information by keeping it secret or confidential.

4. Employee further acknowledges that included among his duties as an employee is the duty not to compete with the Company during the period of his employment and for a period of time thereafter.

NOW, THEREFORE, in consideration of the mutual covenants and conditions set forth herein and other good and valuable consideration, including the payment of salary and/or commissions to Employee by the Company, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. Proprietary Information and Confidentiality

(a) The Employee covenants and agrees with the Company that he will not, either during the term of his employment, or at any time thereafter, disclose to anyone, or use for his own benefit, except as required in the conduct of the Company's business or as authorized in writing on behalf of the Company, any confidential or proprietary

information (the "Proprietary Information") relating to the business of the Company or an Affiliated Company (as hereinafter defined) which he may in any way acquire by reason of his employment by the Company, nor will he authorize others to do so. Without limiting the generality of the foregoing, the Employee understands that the Company deems the following to be Proprietary Information: trade secrets, customer or client lists, financial matters, company records of accounts, business projection, company contracts, marketing plans, pricing information and formulas, matters contained in unpublished records and correspondence, planned expansion programs including areas of expansion, equipment requirements, potential customer lists, licensing and franchising activities, products in development or contemplated, and any and all information concerning the business or affairs of the Company or an Affiliated Company which is not know by or generally available to the public.

(b) The Employee agrees that any work or research, or the results thereof, made or developed by the employee, alone or in connection with others, heretofore or heretoafter during the term of his employment, made or conceived during the period of his employment, whether during or out of the usual hours of work, which arise out of or which are related to the business, research and development work or field of operation of the Company or of any Affiliated Company shall be the sole and exclusive property of the Company.

(c) The Employee agrees to disclose promptly to the Company, completely and in writing, any and all discoveries, products, processes and improvements, and all ideas made or conceived by the Employee, alone or in connection with others, heretofore or heretoafter during the term of his employment, whether during or out of his usual hours of work, which might reasonably be construed as arising out of or relating to the business, research and development work or field of operations of the Company or any Affiliated Company, and not to disclose the same to any other person unless so directed in writing by the Company or unless the Company grants a written waiver with respect thereto.

(d) All papers and records of every kind relating to the Proprietary Information, which are the property of the Company or an Affiliated Company under this Agreement, which shall at any time come into the possession of the Employee shall be the sole and exclusive property of the Company and shall be surrendered to the Company upon termination of the Employee's employment or upon request at any time either during or after the termination of such employment.

(e) The term "Affiliated Company" as used in this Agreement means:

(i) Any corporation, joint venture, business trust, association, partnership or other entity which, directly or indirectly through one or more intermediate controls, is controlled by or is under common control with the Company. For this purpose, "control" shall mean the possession of the power to direct or cause the direction of the management and policies of such entity, whether through

the ownership or voting securities or other instruments or by contract or otherwise.

(ii) A corporation in which or with which the Company, its corporate successors or assigns, is merged or consolidated in accordance with applicable statutory provisions for merger or consolidation of corporations, provided that by operation of law or by effective provisions contained in the instruments of merger or consolidation, the liabilities of the corporations participating is such merger or consolidation are assumed by the corporation surviving such merger or created by such consolidation, or

(iii) A corporation acquiring this agreement and all or substantially all of the assets of the Company, its corporate successors or assigns.

Acquisitions by the Company, or its successors or assigns, of all or substantially all of the assets, together with the assumption of all or substantially all the obligations and liabilities of any corporation, shall be deemed a merger of such corporation into the Company for the purpose of this Agreement.

(f) Should the Employee be employed by an Affiliated Company (through transfer or otherwise), this Agreement shall continue to be a part of his employment with such new employer, and the phrase the "Company" as used herein shall apply to such new employer.

2. Covenant Not To Compete

(a) The Employee agrees that during his employment by the Company he will devote his entire services, skills, abilities and working time to his employment by the Company and that he will not during his employment by the Company render (as employee, consultant or otherwise) any services in any way related to the field of operations of the Company or any Affiliated Company to anyone other than the Company and/or an Affiliated Company.

(b) Deleted.

(c) Employee further agrees that for a period of thirty-six (36) months from the date of such termination, or from the date of any final judgment upholding the provisions of this Section 2, whichever is later, he will not, on behalf of himself or any competitor of the Company or an Affiliated Company, or as part of any business entity, (i) compete for, or engage in the solicitation of, any person or entity that the Company or an Affiliated Company has, during the three (3) years immediately preceding such termination, solicited or serviced; or (ii) hire or engage, or attempt to hire or engage, any individual who was an employee of the Company at any time during the three (3) year period immediately prior to such termination or during the thirty six (36) month non-solicitation period; provided, however, the prohibition contained in section (i) of this paragraph (c) shall not prohibit the Employee from contacting the people and

entities described therein for purposes which do not violate the non-competition covenants by which the Employee is bound.

(d) Employee further agrees that for a period of thirty six (36) months from the date of such termination, or from the date of any final judgment upholding the provisions of this Section 2, whichever is later, he will not accept employment with, or render services to, any person or entity that the Company or an Affiliated Company has solicited, serviced or received services from (a "Customer") during the three (3) years immediately preceding such termination, where either (i) Employee's duties in the course of any such activities would be similar to those he has performed for the Company hereunder and such Customer offers products or services similar to those offered by the Company, (ii) Employee's duties in the course of such activities would involve disclosure or use of the Proprietary Information described in Section 1 herein, or (iii) the duties and services performed and provided by the Employee for such Customer are duties and services for which such Customer would customarily engage the Company to perform and provide. * Excluded from this paragraph is a list provided by the Director to the Company which will be mutually agreed upon prior to execution of the employment agreement. The following is a list of lender/relationships that will be excluded from covenant: Washington Mutual, New Century, Option One, Interbay Funding, Citibank, Greenpoint, Boston Federal, Astoria, and Bank of America.

(e) Employee acknowledges that he will become conversant with the affairs, the customers and other Proprietary Information of the Company and all Affiliated Companies, and that his compliance with his obligations in this Section 2 is necessary to protect the goodwill and other proprietary interests of the Companies (and any such Affiliated Companies).

(f) EMPLOYEE REPRESENTS AND WARRANTS THAT THE KNOWLEDGE, SKILLS AND ABILITIES HE POSSESSES ARE SUFFICIENT TO PERMIT HIM, IN THE EVENT OF TERMINATION OF HIS EMPLOYMENT HEREUNDER FOR ANY REASON, TO EARN, FOR A PERIOD OF THIRTY SIX (36) MONTHS FROM SUCH TERMINATION, A LIVELIHOOD SATISFACTORY TO HIMSELF WITHOUT VIOLATING ANY PROVISIONS OF SECTION 2 HEREOF, FOR EXAMPLE, BY USING SUCH KNOWLEDGE, SKILLS AND ABILITIES, OR SOME OF THEM, IN THE SERVICE OF A NON-COMPETITOR OF THE COMPANY.

(g) In the event of any violation of the foregoing provisions of this Section 2, the Company shall be entitled, in addition to any other rights or remedies it may have,

(i) to seek injunctive relief, it being agreed that the damages which the Company would sustain upon any such violation are difficult or impossible to ascertain in advance and that Employee's violations would cause irreparable harm to the Company, and

entities described therein for purposes which do not violate the non-competition covenants by which the Employee is bound.

(d) Employee further agrees that for a period of thirty six (36) months from the date of such termination, or from the date of any final judgment upholding the provisions of this Section 2, whichever is later, he will not accept employment with, or render services to, any person or entity that the Company or an Affiliated Company has solicited, serviced or received services from (a "Customer") during the three (3) years immediately preceding such termination, where either (i) Employee's duties in the course of any such activities would be similar to those he has performed for the Company hereunder and such Customer offers products or services similar to those offered by the Company, (ii) Employee's duties in the course of such activities would involve disclosure or use of the Proprietary Information described in Section 1 herein, or (iii) the duties and services performed and provided by the Employee for such Customer are duties and services for which such Customer would customarily engage the Company to perform and provide. * Excluded from this paragraph is a list provided by the Director to the Company which will be mutually agreed upon prior to execution of the employment agreement.

(e) Employee acknowledges that he will become conversant with the affairs, the customers and other Proprietary Information of the Company and all Affiliated Companies, and that his compliance with his obligations in this Section 2 is necessary to protect the goodwill and other proprietary interests of the Companies (and any such Affiliated Companies).

(f) EMPLOYEE REPRESENTS AND WARRANTS THAT THE KNOWLEDGE, SKILLS AND ABILITIES HE POSSESSES ARE SUFFICIENT TO PERMIT HIM, IN THE EVENT OF TERMINATION OF HIS EMPLOYMENT HEREUNDER FOR ANY REASON, TO EARN, FOR A PERIOD OF THIRTY SIX (36) MONTHS FROM SUCH TERMINATION, A LIVELIHOOD SATISFACTORY TO HIMSELF WITHOUT VIOLATING ANY PROVISIONS OF SECTION 2 HEREOF, FOR EXAMPLE, BY USING SUCH KNOWLEDGE, SKILLS AND ABILITIES, OR SOME OF THEM, IN THE SERVICE OF A NON-COMPETITOR OF THE COMPANY.

(g) In the event of any violation of the foregoing provisions of this Section 2, the Company shall be entitled, in addition to any other rights or remedies it may have,

(i) to seek injunctive relief, it being agreed that the damages which the Company would sustain upon any such violation are difficult or impossible to ascertain in advance and that Employee's violations would cause irreparable harm to the Company, and

(ii) to reimbursement by the Employee for all costs and expenses, including reasonable attorneys' fees, which the Company may incur in connection with

the successful enforcement of its rights pursuant to this Section 2; provided, however, that if the Company is unsuccessful in obtaining injunctive relief, the Company shall reimburse the Employee for all costs and expenses, including reasonable attorneys' fees, which the Employee may incur in defending against such action by the Company.

(h) The Employee represents and warrants to the Company that he is not now under any obligation of a contractual or quasi contractual nature to any person, firm or corporation which is inconsistent or in conflict with this Agreement or which would prevent, limit or impair in any way the performance by him of his obligations hereunder.

3. Successors and Assigns

This Agreement shall extend to and be binding upon the Employee, his legal representative or representatives and testate or intestate distributees, and this Agreement shall extend to and be binding upon the Company, its successors and assigns. The term "Company" as used herein shall include such successors and assigns. The term "successors and assigns" as used herein shall mean a corporation or other entity acquiring all or substantially all the assets and business of the Company (including this Agreement) whether by operation of the law or otherwise.

4. Notices

Any notice required or permitted by this Agreement shall be given by registered or certified mail, return receipt requested, addressed to the Company at its then principal office, or to the Employee at his address specified below, or to either party hereto at such other address or addresses as he or it may from time to time specify for the purpose in a notice similarly given.

5. Governing Law

This Agreement is made and delivered within the Commonwealth of Massachusetts, and shall be construed in accordance with the laws of the Commonwealth of Massachusetts.

6. Entire Agreement

This instrument contains the entire agreement of the parties relating to the subject matter hereof, and there are no agreements, representations or warranties not herein set forth. No modification of this Agreement shall be valid unless in writing and signed by the parties hereto. The waiver or breach of any term or condition of this Agreement shall not be deemed to constitute a waiver of any subsequent breach of the same or any other term or condition.

7. Severability

In the event that any section of this Agreement, or any provision of any such section, shall for any reason be held to be wholly invalid, illegal or unenforceable, such invalidity, illegality or unenforceability shall not affect any other section hereof, or any other provisions of any affected section, and this Agreement shall be construed as if, and enforced as fully as if, such invalid, illegal or unenforceable section or provisions had never been contained herein. In the event any section, or any provision thereof, is found to be partially invalid, illegal or unenforceable (on the ground, for example, that it is excessive in scope), then such section or provision shall be enforced to the extent not invalid, illegal or unenforceable, and its partial invalidity, illegality or unenforceability shall not affect any other section of this Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered this Agreement under seal as of the day, month and year first above written.

ATTEST:

PATRIOT FUNDING L.P.

By: ________________, CONTROLLER

WITNESS:

EMPLOYEE:

______________________________

______________________________

Print Name: Heath B. Estat

Print Address: 28 Branch Ave

Cranston, RI 02910

ACKNOWLEDGMENT UPON
TERMINATION OF EMPLOYMENT

On this ________ day of __________________, ______, I have reread the above Agreement and agree to abide by its terms.

EMPLOYEE:

______________________________

PATRIOT FUNDING L.P.

By:______________________________